IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SPX Corporation,

                Plaintiff,

      -vs-

Mastercool U.S.A., Inc., et al.,

                Defendants.

Case No. 3:10 CV 1266

MEMORANDUM OPINION
AND ORDER

JUDGE JACK ZOUHARY

**INTRODUCTION**

This matter is before the Court on Plaintiff SPX Corporation's (SPX) Motion to Dismiss Defendant Mastercool U.S.A., Inc.'s (Mastercool) Third Counterclaim pursuant to Federal Civil Rule 12(b)(6) (Doc. No. 47).  Mastercool opposed (Doc. No. 58) and SPX replied (Doc. No. 61).

SPX filed a Complaint alleging Mastercool and other defendants were liable for patent infringement (Doc. No. 1).  Mastercool filed an Answer and Counterclaim (Doc. No. 16).  This Court granted Mastercool leave to amend its Answer (Doc. No. 39); Mastercool subsequently filed an Amended Answer (Doc. No. 40) and added the antitrust counterclaim which SPX now contests through its Motion to Dismiss.

**BACKGROUND**

SPX and Mastercool sell automotive refrigerant recycling and recovery machines ("ARRR equipment").  ARRR equipment "processes refrigerants used in automotive air conditioning systems so that the refrigerants may be used again in the same system or disposed of in an environmentally

safe manner" (Doc. No. 58 at 2).  Most of the equipment sold in the United States is through distributors who mainly market to consumers through catalogs (Doc. No. 40 at 9).  When consumers require their equipment to be serviced, they rely on technicians (i.e., servicers) with "specific know-how" and experience (Doc. No. 40 at 9-10).

Mastercool's antitrust counterclaim alleges SPX has acted to prevent Mastercool from establishing itself in the ARRR equipment market by "unlawfully restraining advertising for Mastercool products and undercutting Mastercool's ability to provide service to consumers of its ARRR Equipment" (Doc. No. 40 at 10).  Through its distributor contracts, SPX provides funds to distributors in exchange for their exclusive advertisement of certain SPX products; if a distributor advertises competitive products from another manufacturer, that distributor will forfeit the advertising incentive funds from SPX (Doc. No. 49 at 3).  Addtionally, SPX's servicer contracts prohibit servicers from servicing competitors' products without SPX's written consent (Doc. No. 48 at 1).

Each of the distributor and servicer contracts has a one-year duration (Doc. 47-1 at 4).  Either party may terminate the servicer contract "for any reason" upon providing written notice 30 days prior to termination.  Similarly, either the distributor or SPX may terminate a contract "with or without cause" upon providing written notice 90 days prior to termination.

Mastercool's antitrust counterclaim also alleges SPX "maintain[s] a market share of approximately 85 – 90%," and SPX uses its dominant market position to impose exclusivity agreements upon servicers and distributors (Doc. No. 40 at 9, 12).  Mastercool further alleges that SPX's conduct has caused injury to the market for ARRR equipment "in the form of reduced competition, innovation, and consumer choice" in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (Doc. No. 40 at 13).

## STANDARD OF REVIEW

The court's function when deciding a motion to dismiss under Federal Civil Rule 12(b)(6) is to test the legal sufficiency of the claim.  The court must accept as true the allegations stated in the claim, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the claim in a light most favorable to the non-moving party.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).  Although a claim need not contain "'detailed factual allegations,' it must include more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  And "[a] claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In *Twombly*, while "[a]cknowledging that material allegations must be accepted as true and construed in the light most favorable to the nonmoving party," the Supreme Court "nevertheless held" that a court may dismiss a complaint for failure to state a claim where the claimant fails "to plead enough factual detail to state a claim that is plausible on its face."  *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* --- F.3d ----, 2011 WL 2448909, at *2 (6th Cir. 2011).

## ANALYSIS

Antitrust standing is "a threshold, pleading-stage inquiry"; when a claim fails to establish this requirement, a court "must dismiss it as a matter of law."  *Nicsand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007).  Courts have developed a two-step analysis to determine whether a party has standing to prosecute a private antitrust claim.  *See Balaklaw v. Lovell*, 14 F.3d 793, 798 n. 9 (2nd Cir. 1994).

3

As an initial matter, a party "must prove antitrust injury, which is to say injury to the type the antitrust laws were intended to prevent." *Valley Prods. Co., Inc. v. Landmark, A Div. of Hospitality Franchise Sys., Inc.*, 128 F.3d 398, 402 (6th Cir. 1997) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  This requirement ensures a claimant can recover "only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum. Co.*, 495 U.S. 328, 344 (1990) (emphasis in original).

The existence of an antitrust injury "is a 'necessary, but not always sufficient,' condition of antitrust standing." *Nicsand*, 507 F.3d at 450 (quoting *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n. 5 (1986)).  If the court determines there is an antitrust injury, it "must then 'determine whether any of the other factors, largely relating to the directness and identifiability of the [claimant's] injury, prevent the [claimant] from being an efficient enforcer of the antitrust laws.'" *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 884 (N.D. Ohio 2008) (quoting *Balaklaw*, 14 F.3d at 798 n. 9).  Since Mastercool fails to properly allege the necessary element of antitrust injury, however, this Court need not reach the second step in the standing analysis, or the remaining issues SPX raises.

Mastercool fails to allege facts sufficient "to state a claim for relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949.  Mastercool alleges SPX's distributor and servicer contracts prohibit Mastercool and other ARRR equipment suppliers from using those same distributors and servicers (Doc. No. 40 at 10-12).  Mastercool's conclusory allegation that these contracts are anti-competitive, and therefore cause an antitrust injury, is insufficient "in light of the fact that the exclusive contracts [are] of limited duration, and in light of the fact that the [distributors and servicers are] free to seek

4

other [suppliers] at the conclusion of the contracts." *Indeck Energy Serv., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 977–78 (6th Cir. 2000).

In *Indeck*, Consumers Energy contracted with 19 General Motors facilities to be the exclusive supplier of power to those facilities for 5 to 10 years; in exchange, Consumers Energy offered GM "a 'multi-million dollar discount on power costs.'" *Id*. at 975. Consumers Energy also entered into contracts with a number of other large power consumers, "effectively preempting 87% of the [relevant] market." *Id*. at 977. After considering the length of the exclusive contracts and the percentage of the relevant market those contracts affected, the Sixth Circuit reached "the inescapable conclusion that the district court properly dismissed Indeck's [antitrust] cause of action." *Id*. ("The record . . . presents no indication that *competition* itself was harmed" by the agreements"). While the trial court's standard of review was unclear, the Sixth Circuit noted it would reach "an identical conclusion" whether it analyzed the claim under Rule 12(b)(6) or Rule 56. *Id*. at 977 n.1. *See also CBC Cos., Inc. v. Equifax, Inc.*, 561 F.3d 569, 572 (6th Cir 2009) ("Unless an antitrust plaintiff alleges an injury that arises from an anti-competitive aspect of the practice under scrutiny, the complaint will not survive Rule 12(b)(6) scrutiny")(citations omitted).

Other courts have taken similar views with respect to exclusive contracts in the context of private antitrust claims, requiring significant or substantial interference with competition. The Seventh Circuit has noted "the objection to exclusive-dealing arrangements is that they deny outlets to a competitor during the term of the agreements. . . . [These agreements, however], will be . . . condemned only if found to restrain trade unreasonably." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 393 (7th Cir. 1984). The court in *Roland* concluded that if an agreement does not exclude a significant competitor, "the agreement cannot possibly harm competition." *Id*. at 394.

5

Similarly, the First Circuit has held:

> "[T]oday exclusive dealing contracts are not disfavored by the antitrust laws. . . . The best example of a possible threat to competition exists where a market is already heavily concentrated and long-term exclusive dealing contracts . . . foreclose so large a percentage of the available supply or outlets that entry into the concentrated market is unreasonably constricted.  Even here there will normally be no serious effects in certain conditions (e.g., the contracts are for short terms, new entry at the supplier or outlet business allegedly restrained is easy), but, at a minimum, substantial foreclosure is essential and existing concentration important."

*Eastern Food Serv., Inc. v. Pontifical Catholic Univ. Serv. Ass'n, Inc.*, 357 F.3d 1, 8 (1st Cir. 2004); *see also Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) ("[E]ven though a contract is found to be an exclusive-dealing arrangement, it does not violate the [the antitrust act] unless the court believes it probable that performance of the contract will foreclose competition in a substantial share of the line of commerce affected"); *Roland Mach. Co.*, 749 F.2d at 394 ("The exclusion of one or even several competitors, for a short time or even a long time, is not *ipso facto* [an] unreasonable [restraint on trade]").

Here, SPX's contracts with distributors and servicers have a short one-year duration, and provide for termination by written notice for any reason after 30 or 90 days.   Such short contracts, with no-questions-asked termination clauses, do not approach the threshold of foreclosing competition, even in a substantial share of the market, required for a private antitrust claim. Assuming that SPX has exclusive agreements with most of the distributors and servicers in the ARRR equipment market, nothing prevents Mastercool from competing for those distributors and servicers once the agreements expire, or from offering more favorable terms (e.g., larger rebates, longer terms) to entice distributors and servicers to exercise the early termination provisions in the agreements.

Further, Mastercool's vague assertions that SPX's actions "impact approximately 80% of Mastercool's distribution chain by unit volume," and impact other ARRR Equipment suppliers in a

6

similar fashion, (Doc. No. 40 at 13), do not permit this Court to draw a "reasonable inference" that SPX is "liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Mastercool offers only the conclusory allegation that SPX's conduct has harmed competition (Doc. No. 40 at 13). With nothing more than short-term terminable contracts, this Court concludes Mastercool has not sufficiently pled an antitrust claim against SPX.

## MOTION FOR LEAVE TO AMEND

In its Opposition to SPX's Motion to Dismiss, Mastercool requests yet another opportunity to amend its counterclaim in the event this Court concludes its counterclaim is deficient (Doc. No. 58 at 16-18).  Federal Civil Rule 15(a) requires that leave to amend a pleading be freely given "when justice so requires."  The Sixth Circuit in *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001), requires this Court to consider several factors in determining whether to grant leave to amend, including the following:

- Undue delay in filing;
- Lack of notice to opposing party;
- Bad faith by the moving party;
- Repeated failures to cure deficiencies by previous amendments;
- Undue prejudice to the opposing party; and
- Futility of amendments.

Balancing these factors, this Court concludes Mastercool's request for leave to amend should be denied.  Mastercool's proposed amendments do not rectify the shortcomings in its antitrust counterclaim.  At best, Mastercool's proposed amendments are "merely consistent with," but do not plausibly suggest, antitrust injury. *Twombly*, 550 U.S. at 557.  For example, Mastercool proposed, as an additional factual allegation, that a smaller distributor not tied into SPX "sold three-times the number of Mastercool ARRR Equipment as [a] much larger but restricted Distributor" (Doc. No. 58 at 17).  This allegation, if accepted as true and viewed in a light most favorable to Mastercool, proves

only that the restricted Distributor adhered to the terms of the advertising exclusivity provision in its contract with SPX.  It does not prove SPX's conduct (i.e., including the exclusivity provision in the contract with the distributor) caused an antitrust injury.  As this Court noted above, there is nothing prohibiting Mastercool from competing for contracts with distributors and servicers, either through the early termination provisions or following the expiration of existing contracts.

Furthermore, Mastercool's proposed amendment would not be sufficient to state a plausible claim for relief and, thus, could not withstand a subsequent motion to dismiss pursuant to Federal Civil Rule 12(b)(6).  Amendment would be futile because, even if the Court assumes all of Mastercool's proposed additional facts are true, the proposed changes would fail to permit this Court to make a reasonable inference that SPX's conduct has injured competition in the ARRR equipment market.  *See, e.g., Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss."); *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980) ("[I]f a complaint as amended is subject to dismissal, leave to amend need not be given").

### CONCLUSION

For the above reasons, SPX's Motion to Dismiss Mastercool's Third Counterclaim is granted, and Mastercool's request for leave to amend is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*    
JACK ZOUHARY
U. S. DISTRICT JUDGE

June 24, 2011

8